# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BRANDON C. SCHNEIDER,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants*.

No. 18-cv-0474 (DLF)

## MEMORANDUM OPINION

Brandon Schneider brings this suit alleging that the Department of Justice's Federal Bureau of Investigation (FBI) and the Office of Personnel Management (OPM) unlawfully withheld records in violation of the Privacy Act of 1974, 5 U.S.C. § 552a, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Before the Court is the government's Motion for Summary Judgment, Dkt. 7, and Schneider's Cross Motion for Summary Judgment, Dkt. 12. For the reasons that follow, the Court will grant the government's motion and deny Schneider's cross motion.

## I.    BACKGROUND

In February 2016, OPM initiated a background check on Schneider for a Summer Chaplain Internship at Fort Belvoir Community Hospital. *See* Compl. ¶ 13, Dkt. 1. The background check process revealed that, in 2005, an individual whom OPM believed to be Schneider admitted to certain actions during a law enforcement interview. *See* Brewer Decl. Ex. D, Dkt. 7-4. Although Schneider denies these allegations, he was removed from parish ministry and is unable to return. *See id*.

In October 2017, Schneider submitted a request under FOIA and the Privacy Act to OPM's National Background Investigation Bureau, the department that oversees background investigations, for a copy of all material related to the alleged incident. Brewer Decl. ¶¶ 3–4, Dkt. 7-2; *see also id.* Ex. A, Dkt. 7-4. OPM provided him with a redacted copy of his file and referred several records to the FBI. *Id*. ¶¶ 5, 7–9, 11. Schneider then appealed, requesting specific information about the 2005 interview, including the date and location of the interview, how the interviewee was identified, the name of the agent who conducted the interview, and the interviewee's address and contact information, signature, and statement of admission, *id.* Ex. D, but his appeal was denied, *id.* ¶ 18. In December 2017, Schneider also contacted the FBI directly and submitted a request under FOIA and the Privacy Act asking for information regarding the 2005 incident. *See* First Hardy Decl, Ex. G & H, Dkt. 7-5.

In response to these requests, the FBI searched the Central Records System, the principal database in which the FBI indexes information about subjects of investigative interest. First Hardy Decl. ¶¶ 19, 27–28, Dkt. 7-3; *see also* Third Hardy Decl. ¶ 18, Dkt. 21. In total, the FBI reviewed 24 pages of responsive records and released 10 pages in full or in part to Schneider. First Hardy Decl. ¶ 4. The FBI invoked FOIA Exemptions 6, 7(C), and 7(E) and Privacy Act Exemption (j)(2) to justify its withholdings and redactions. *See id*. ¶¶ 30–32.

On February 28, 2018, Schneider filed the instant action. *See* Compl. He does not challenge OPM's search or the FBI's use of FOIA Exemptions 6 or 7(C) to justify redacting and withholding documents, *see* Pl.'s Br. at 3, n.1, Dkt. 12; nor does he appear to contest the FBI's use of Privacy Act Exemption (j)(2), *see id*. at 3–7. Schneider only challenges the adequacy of the FBI's search and its use of FOIA Exemption 7(E) to justify redacting and withholding documents. *See id*.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one with the potential to change the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See id.* All facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with the applicable legal standard. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009). If "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency. *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988). That said, courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The Privacy Act and FOIA are structurally similar. *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981). Both provide a requester with access to federal agency records about the requester and create a private cause of action when an agency fails to comply with a valid request. *See* 5 U.S.C. §§ 552a(d)(1), (g)(1) (Privacy Act); 5 U.S.C. §§ 552(a)(3)(A), (a)(4)(B) (FOIA). If agency searches reveal records responsive to a Privacy Act or FOIA request, an agency may withhold access to the records if the statutes exempt them from disclosure. *See* 5 U.S.C. §§ 552a(j)(2), (k)(2); 5 U.S.C. § 552(b).

Although the Privacy Act and FOIA "substantially overlap," the statutes "are not completely coextensive; each provides or limits access to material not opened or closed by the other." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982). Accordingly, "[t]he two acts explicitly state that access to records under each is available without regard to exemptions under the other." *Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). This means that, when both statutes are at play, an agency seeking to withhold records must "demonstrate that the documents fall within some exemption under *each* Act." *Id.* (emphasis in original). "If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations" have been met. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). The agency's affidavits are accorded a presumption of good faith, *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

## III.    ANALYSIS

The parties dispute two issues: whether the FBI adequately searched its records under FOIA and the Privacy Act, and whether the FBI properly withheld and redacted records pursuant to FOIA Exemption 7(E). As explained below, the Court concludes that the FBI conducted an

adequate search and that the FBI properly invoked Exemption 7(E) to prevent the disclosure of law enforcement techniques that would reasonably risk circumvention of the law.

### A.   Adequacy of the Search

To prevail on a motion for summary judgment in a FOIA case, an agency must demonstrate that it "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The analysis centers on whether the search was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  This standard applies to requests under both FOIA and the Privacy Act.  *See Chambers*, 568 F.3d at 1005 (stating that "the Privacy Act, like FOIA, requires" that a search be "reasonably calculated to uncover all relevant documents" (internal quotation marks omitted)).  "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."  *Perry*, 684 F.2d at 128.

To demonstrate the adequacy of a search, an agency may rely upon detailed, non-conclusory affidavits submitted in good faith.  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The government submitted four declarations in the present case: one from Katherine Brewer, OPM's Senior Counsel in its Office of the General Counsel, and three from David M. Hardy, the chief of the FBI's Record/Information Dissemination Section, Information Management Division.

The three Hardy declarations establish that the FBI conducted reasonable searches that employed methods likely to produce records responsive to Schneider's requests.  The FBI ran multiple searches of its primary records system—the Central Records System—including for

cross-reference records, which are excerpts of other main investigative files that mention a subject who is not the primary individual under investigation. *See* First Hardy Decl. ¶ 27–28; Second Hardy Decl. 4–5, Dkt. 16-1. The FBI used a three-way phonetic breakdown of Schneider's name,[1] date of birth, place of birth, and social security number. First Hardy Decl. ¶¶ 27.

The FBI "reasonably expected" that the Central Records System, the FBI's central database, was the system most likely to contain records responsive to Schneider's request for investigative information about himself. *See id.* ¶ 29; Second Hardy Decl. ¶ 4. The FBI's additional searches for cross-references further demonstrates the FBI's good faith attempts to uncover "all relevant documents." *See Weisberg*, 705 F.2d at 1351. And the FBI's use of search criteria that included Schneider's personal identification information and multiple versions of his name was "reasonably calculated" to produce documents relating to him. *See* First Hardy Decl. ¶ 27.

The parties dispute whether the FBI had an "obligation" to search for additional records because the disclosed records referred to the 2005 investigation. *See* Pl.'s Br. at 4; Def.'s Reply at 2–3, Dkt. 16. Because Schneider submitted his request to the FBI, the FBI was obliged to search only those databases within its control. To the extent Schneider suggests that the FBI should have queried databases of other DOJ components, an agency component need not produce documents in the custody of another component. *See Trupei v. Drug Enf't Admin.*, No. 06-cv-1162, 2007 WL 7695091, at *2 (D.D.C. Apr. 27, 2007) (noting an agency component does

---

[1] The three-way phonetic breakdown separated Schneider's name in the system as: (1) First Name, Last Name; (2) Last Name, First Name; and (3) First Name, Middle Name, Last Name. First Hardy Decl. ¶ 27 n.8. This approach enables the computer to return results that "match a certain percentage of the first and last names entered." *Id.*

not need to forward FOIA requests to another agency component when its regulations do not require it to do so); *see also Nat'l Sec. Archive v. Archivist of the United States*, 909 F.2d 541, 546 (D.C. Cir. 1990) ("[A]n entity that does not have 'possession or control' of requested documents [is not required] to forward a request to the appropriate entity."); *Antonelli v. U.S. Parole Comm'n*, 619 F. Supp. 2d 1, 6 (D.D.C. 2009) ("[A]n agency component is obligated to produce only those records in its custody and control at the time of the FOIA request.").

Schneider also has not established that the disclosed records suggested a "lead" that would obligate the FBI to conduct additional searches. When "leads" emerge during an agency's search, an agency "must revise its assessment of what is reasonable." *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotations omitted). But an agency is not "required to speculate about potential leads," and it is "rare" that a record contains "a lead so apparent that the [agency] cannot in good faith fail to pursue it." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). Schneider speculates that additional documents about the investigation "should exist," Pl.'s Reply at 2, Dkt. 17, but conjecture alone does not meet the "exacting standard" of a lead "so apparent" that the FBI must conduct additional searches. *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 407 (D.C. Cir. 2017); *but see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326–27 (D.C. Cir. 1999) (holding that a search was inadequate because the agency failed to search a database it identified as a likely place where the documents might be located). It is well established that a search does not become unreasonable just because "it fails to produce all relevant material" related to a request. *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (quoting *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986)).

## B. Privacy Act Exemption (j)(2)

As noted, Schneider does not specifically challenge the government's withholding of records under Exemption (j)(2) of the Privacy Act. Thus, Schneider apparently concedes that the FBI complied with the Privacy Act. *See Lash v. Lemke*, 786 F.3d 1, 10 (D.C. Cir. 2015) (a party's "claim is also doomed by [his] failure to provide any meaningful argument . . . in support of it."). Out of an abundance of caution, the Court will briefly address the exemption here. *See Martin*, 819 F. 2d at 1184.

The Privacy Act provides that when an individual seeks to "gain access to his record or to any information pertaining to him which is contained in the system," each agency that "maintains a system of records" shall permit the individual to "review the record and have a copy made" to him. 5 U.S.C. § 552a(d)(1). Under Exemption (j)(2), the government need not disclose records that are: (1) stored in a system of records an agency has designated as exempt from the Privacy Act's disclosure requirements; and (2) stored in a system that is maintained by an agency that principally performs "any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). The FBI's withholdings and redactions satisfy both prongs of § 552a(j)(2). First, the CRS has been exempted from relevant Privacy Act disclosure requirements. *See* 63 Fed. Reg. 8,671, 8,684 (Feb. 20, 1998) (exempting CRS from certain provisions of the Privacy Act); *see also Barouch v. DOJ*, 87 F. Supp. 3d 10, 31 (D.D.C. 2015). Second, the responsive records, which contain information relating to law enforcement investigations, are part of the FBI's "primary law enforcement mission." First Hardy Decl. ¶ 31. The "investigatory records" were created specially "to investigate [Schneider's] potential violations of federal law." *Id*. Accordingly, the FBI properly exempted the responsive materials under the Privacy Act.

### C. FOIA Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The exemption does not ordinarily protect "routine techniques and procedures already well known to the public." *Founding Church of Scientology of Washington v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979) (internal quotation marks omitted); *see also Judicial Watch v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004). It does, however, protect "confidential details of . . . program[s]" if only their "general contours [are] publicly known." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007) (citing *Blanton v. DOJ*, 64 Fed. App'x 787, 788–89 (D.C. Cir. 2003) (per curiam)). In this Circuit, Exemption 7(E) can apply to even "commonly known procedures" if disclosure would "reduce or nullify their effectiveness." *Vazquez v. DOJ*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012) (internal quotation marks omitted), *aff'd*, No. 13-cv-5197, 2013 WL 6818207, at *1 (D.C. Cir. Dec. 18, 2013) (per curiam).

Exemption 7(E) "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alterations adopted and internal quotation marks omitted). The exemption "looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and

not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* at 1193.

The FBI properly invoked 7(E) to withhold its case file and sub-file numbers. The file numbers relate to "a specific intelligence activity, source or method," and releasing these numbers could reveal the "priority given to such matters." First Hardy Decl. ¶ 54; *see also* Second Hardy Decl. ¶ 10. Disclosure could also "allow criminals to track who or what activities have been targeted for investigation." *Id*.

The government also properly invoked Exemption 7(E) to redact information relating to the results of Schneider's name check that OPM referred to the FBI. *See* Third Hardy Decl. ¶ 3–4. As Hardy explains, the FBI categorically invokes Exemption 7(E) for every name check response to protect indications of potential investigative material. *See* First Hardy Decl. ¶ 48–53.

Disclosing name check results would risk exposing FBI procedures and techniques, such as how it collects and analyzes investigative information. *See* Third Hardy Decl. ¶ 3. The FBI categorically withholds the results of each name check regardless of whether derogatory information is identified, because a refusal to disclose only derogatory information "would itself be interpreted as an admission that the FBI possesse[s] investigative records about an individual." *Id*. By submitting multiple requests, bad actors could track information about the nature, size, location, status, and classification of an investigation and use it in the aggregate to impede or circumvent current or future investigations. *See* First Hardy Decl. ¶ 52; Third Hardy Decl. ¶¶ 11–13.

Although the public is generally aware that agencies refer investigative matters to the FBI, and Schneider himself is aware that the name check report mentioned him in connection with a 2005 investigation, *see* Pl.'s Br. at 6, neither is aware of the specifics of the name check system or the FBI's 2005 investigation. Further, public awareness alone does not automatically make 7(E) inapplicable. *See Judicial Watch, Inc. v. FBI*, No. 00-cv-745, 2001 WL 35612541, at

*8 (D.D.C. Apr. 20, 2001) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.").

Schneider argues that the name check results include details about which agency made the allegations in 2005 and this information would allow him to clear his name. Pl.'s Br. at 6–7. But Schneider's suggestion that the name check results includes the referring agency's identity is mere speculation. *See* Hardy Decl. ¶ 9; c*f. Forsham v. Harris*, 445 U.S. 169, 185 (1980) (recognizing FOIA "deals with agency records, not information in the abstract" (internal quotation marks omitted)). And while the Court is sympathetic to Schneider's desire to clear his name, whether the requested information could help him in this respect is immaterial to whether the FBI's decision to withhold documents under Exemption 7(E) is justified. Schneider also argues that he should be entitled to information about a case in which he is the subject, *see* Pl.'s Br. at 7, but the identity of the requesting party "has no bearing on the merits of his or her FOIA request." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989).

In sum, the FBI has logically established that releasing certain investigative information relating to Schneider's file numbers and name check results will "reduce or nullify" the effectiveness of certain law enforcement techniques. *See Vazquez*, 887 F. Supp. 2d at 116. It has "demonstrated logically how the release of the requested information might create a risk of circumvention of the law" and thus is protected from disclosure under Exemption 7(E). *Mayer Brown*, 562 F.3d at 1194.

### D. *In Camera* Review

A district court may in its discretion "examine the contents of" agency records *in camera*. 5 U.S.C. § 552(a)(4)(B); *see also Quinon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) ("The decision to conduct an *in camera* review is committed to the broad discretion of the trial court judge." (internal quotation marks omitted)). *In camera* review is appropriate (1) when the

affidavits are conclusory or "not described in sufficient detail to demonstrate that the claimed exemption applies," or (2) "if there is evidence of agency bad faith." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987). A court can also consider judicial economy, the public interest, and whether the dispute centers on the actual contents of the documents. *Id.*

Schneider asks the Court to review *in camera* the 14 withheld documents to determine whether the FBI properly applied FOIA Exemption 7(E). Pl.s' Br. at 7. The three Hardy declarations "provide specific information sufficient to place the documents within the exemption category." *Quinon*, 86 F.3d at 1227 (internal quotation marks omitted); *see also Marck v. Dep't of Health & Human Services*, 314 F. Supp. 3d 314, 329 (D.D.C. 2018) (denying request for *in camera* review of six pages because the declaration was detailed enough to satisfy FOIA exemptions). The record also lacks any evidence of bad faith by the government. *Plunkett v. DOJ*, No. 11-cv-341, 2015 WL 5159489, at *12 (D.D.C. Sept. 1, 2015) (declining *in camera* review because there was no evidence that the agency's submissions were insufficiently detailed or that the agency acted in bad faith). Accordingly, the Court denies Schneider's request for *in camera* review.

## CONCLUSION

For the foregoing reasons, the Court grants the government's motion for summary judgment and denies Schneider's cross motion for summary judgment. A separate order accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

September 28, 2019